IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Bonnie J. Kassel, as Personal Representative of the Estate of Kal Jordan Kassel,<br><br>PLAINTIFF,<br><br>v.<br><br>KB Holdings of MB, LLC; Sheena Rote; Edward G. Verville Jr.; Derek Ausherman, DSSS, LLC; and Fred B. McGill,<br><br>DEFENDANTS. | C/A No.: 2:26-cv-00923-RMG<br><br>**COMPLAINT**<br><br>**(JURY TRIAL DEMANDED)** |

Plaintiff Bonnie J. Kassel, as Personal Representative of the Estate of Kal Jordan Kassel ("Plaintiff"), by and through her undersigned attorneys, for her Complaint against Defendants KB Holdings of MB, LLC, Sheena Rote, Edward G. Verville Jr., Derek Ausherman, DSSS, LLC, and Fred B. McGill (collectively, "Defendants"), respectfully states as follows:

## PRELIMINARY STATEMENT

1. This action arises from Defendants' scheme to deprive the Estate of Kal Jordan Kassel ("Decedent") of its rightful share of proceeds from two real estate transactions conducted through KB Holdings of MB, LLC ("KB Holdings" or the "Company").

2. In the weeks following Decedent's death, Defendants induced Plaintiff, as Personal Representative of the Estate, to sell Decedent's twenty percent membership interest in KB Holdings for $150,000 while concealing material information, including the recently closed and impending property sales totaling approximately $1.95 million.

3. After extinguishing the Estate's interest, Defendants completed the remaining sales and retained the full proceeds for themselves. As a result of Defendants' fraud and breaches of duty, the Estate was deprived of hundreds of thousands of dollars in distributions to which it was

entitled.

4. Plaintiff seeks compensatory damages, rescission or restoration of the Estate's interest, punitive damages, restitution, attorneys' fees, and such other relief as the Court deems just and proper.

## PARTIES

5. Plaintiff is a citizen and resident of the State of New York. Plaintiff is the Personal Representation of the Estate of Kal Jordan Kassel, her deceased brother, and she brings this action in her capacity as Personal Representative of his estate.

6. Upon information and belief, KB Holdings is a limited liability company organized and existing under the laws of South Carolina and does business in the State of South Carolina.

7. Upon information and belief, Defendant Sheena Rote ("Rote") is a citizen and resident of Horry County, South Carolina. At all times relevant to this action, Rote was a member of KB Holdings, holding a twenty percent membership interest in the Company.

8. Upon information and belief, Defendant Edward G. Verville Jr. ("Verville") is a citizen and resident of Georgetown County, South Carolina. At all times relevant to this action, Verville was a member of KB Holdings, holding a twenty percent membership interest in the Company.

9. Upon information and belief, Defendant, Derek Ausherman, is a citizen and resident of Horry County, South Carolina. At all times relevant to this action, as described in the following paragraph, Ausherman's company, DSSS, LLC, was a member of KB Holdings, holding a twenty percent membership interest in the Company.

10. Upon information and belief, Defendant DSSS, LLC ("DSSS") is a limited liability company organized and existing under the laws of South Carolina, and does business in

Georgetown County, South Carolina. At all times relevant to this action, DSSS was a member of KB Holdings, holding a twenty percent membership interest in the Company.

11. Upon information and belief, Defendant Fred B. McGill ("McGill") is a citizen and resident of Georgetown County, South Carolina. At all times relevant to this action, McGill was a member of KB Holdings, holding a twenty percent membership interest in the Company.

## JURISDICTION AND VENUE

12. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the controversy is between parties of diverse citizenship and the amount in controversy exceeds $75,000.

13. This Court has personal jurisdiction over Defendants because Defendants are citizens of the State of South Carolina, and the causes of action herein derive from Defendants' tortious injury by acts or omissions in the State of South Carolina.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and § 1391(b)(1) because a substantial part of the events or omissions giving rise to the claims occurred in the District of South Carolina, and because all Defendants are residents of the District of South Carolina.

## FACTS

15. KB Holdings was formed as a South Carolina limited liability company in October 2023 for the purpose of investing in real estate.

16. At all times relevant to this action, KB Holdings had five members, each holding a twenty percent membership interest: Decedent, McGill, Rote, Verville, and DSSS.

17. Upon information and belief, Decedent served as the Managing Member of KB Holdings until the time of his unexpected death on May 18, 2025.

18. In November 2023, KB Holdings acquired approximately fifteen acres of real property located in Horry County, South Carolina, for the sum of $621,160, as reflected in the General Warranty Deed recorded in the Horry County Register of Deeds at Book 4747 and Page 2526 (the "Original Parcel").

19. In or around April 2024, KB Holdings entered into a Purchase and Sale Agreement with Quality Oil Company, LLC for the sale of approximately 1.87-acres of the Original Parcel for a purchase price of $550,000 (the "Quality Oil Parcel").

20. Upon information and belief, for more than a year prior to execution of the Purchase and Sale Agreement, Decedent personally led and conducted the negotiations with Quality Oil Company, LLC on behalf of KB Holdings, including discussions regarding price, acreage, access, and other material terms of the transaction. Upon further information and belief, Decedent served as the primary point of contact with Quality Oil Company, LLC throughout the negotiation process and developed and maintained the business relationship that culminated in the April 2024 Purchase and Sale Agreement.

21. In conjunction with the sale of the Quality Oil Parcel, Decedent, Rote, Verville, McGill, and DSSS executed the Written Consent of the Members of KB Holdings of MB, LLC (the "Written Consent"), authorizing the Company to sell the Quality Oil Parcel and providing that Decedent was the member authorized to execute all documents in connection with the sale of the Quality Oil Parcel. The Written Consent was signed with an effective date of May 19, 2025.

22. On or about May 15, 2025, the sale of the Quality Oil Parcel to Quality Oil Company, LLC closed. The Deed conveying the Quality Oil Parcel, executed by McGill on behalf of KB Holdings, was recorded in the Horry County Register of Deeds on May 19, 2025, at Book 4945 at Page 2492.

23. As a result of the Quality Oil Parcel sale, each member of KB Holdings was entitled to receive $110,000, representing their twenty percent share of the $550,000 sales price.

24. On May 18, 2025, Decedent died unexpectedly from a sudden stroke.

25. On or about June 16, 2025, Plaintiff, then eighty years old, travelled alone from New York to Georgetown County, South Carolina to administer decedent's estate, including his twenty percent membership interest in KB Holdings.

26. On or about June 17, 2025, Plaintiff met with counsel for Decedent's Estate to execute documents and begin the formal administration process. During this meeting, counsel for the Estate presented Plaintiff with a one-page written offer from Defendants to purchase Decedent's twenty-percent membership interest in KB Holdings for $150,000. Plaintiff was told that the interest "would be hard to sell."

27. Defendants did not provide Plaintiff with the Operating Agreement of KB Holdings, financial records, valuation information, or any documents reflecting the Company's assets, liabilities, or profitability prior to execution of the agreement. Plaintiff was in a vulnerable state during this period due to her brother's unexpected death and her advanced age.

28. Upon information and belief, Defendants deliberately presented this buyout offer immediately upon Plaintiff's arrival to South Carolina and before she had the opportunity to review the Company's books and records, understand the Company's financial condition, or determine the fair market value of the interest. At the time the offer was made, upon information and belief, Defendants possessed material information concerning the Company's assets, operations, and value that was not disclosed to Plaintiff.

29. Following Decedent's memorial service, on or about June 30, 2025, Plaintiff received a telephone call informing her that Chase McGill, KB Holding's real estate attorney and

the brother of Defendant McGill, would be coming to the residence within hours for Plaintiff to execute documents related to the buyout. In light of the longstanding personal and business relationships between Decedent, Chase McGill, and Defendants, Plaintiff had no reason at that time to question the propriety or fairness of the request.

30. At that time, Plaintiff was grieving and under significant emotional distress. Concerned about the fairness of the offer, Plaintiff contacted Derek Ausherman, a member of Defendant DSSS, whom she believed was a trusted friend of the Decedent. Mr. Ausherman represented to Plaintiff that the $150,000 buyout offer was "fair."

31. Plaintiff signed the Membership Interest Redemption Agreement (the "Buyout Agreement") on or about June 30, 2025, relying on the assurances from Defendants, either directly or through intermediaries, that the offer was fair.

32. At no time was Plaintiff given any papers, documents, or information about KB Holdings before or at the time of signing the Buyout Agreement.

33. Pursuant to the Buyout Agreement, Plaintiff sold, transferred, and assigned all of Decedent's twenty percent membership interest in KB Holdings to the Company for the sum of $150,000.

34. Pursuant to the Buyout Agreement, Defendants Rote, Verville, DSSS, and McGill would each own a twenty-five percent interest in KB Holdings.

35. On or about July 4, 2025, while reviewing Decedent's personal and business records at his residence, Plaintiff discovered the Operating Agreement of KB Holdings, documents relating to the sale of the Quality Oil Parcel, and the deed to the Original Parcel showing the initial investment of the five partners for KB Holdings.

36. Upon reviewing these documents, and upon information and belief, Plaintiff

learned that Estate had received only approximately $25,748 above Decedent's original capital contribution of approximately $124,232 toward the purchase of the Original Parcel, plus $20 contributed at formation.

37. Upon information and belief, in determining the buyout amount, Defendants intentionally ignored the profits from the recently closed Quality Oil sale and the Estate's twenty percent interest in the remaining approximately thirteen acres of land of the Original Parcel.

38. On or about July 9, 2025, after reviewing the documents found in Decedent's residence, Plaintiff confronted Mr. Ausherman regarding the transaction. Mr. Ausherman admitted that DSSS was "outvoted," and subsequently arranged for Plaintiff to receive an additional $50,000 from Defendants on or about July 11, 2025.

39. In total, Plaintiff received approximately $200,000 for the Estate's twenty percent membership interest in KB Holdings.

40. On or about October 29, 2025, approximately three months after Plaintiff signed the Buyout Agreement, the remaining members of KB Holdings (Rote, Verville, McGill, and DSSS) closed on the sale of the remaining approximately 13.11 acres of the Original Parcel for $1,400,000 (the "Remaining Parcel"). The deed conveying the Remaining Parcel was recorded in the Horry County Register of Deeds on or about October 30, 2025, in Book 5007 at Page 2602.

41. Each remaining member's twenty-five percent share of the $1.4 million land sale was $350,000.

42. In total, Defendants received approximately $1,950,000 in proceeds from the sales of the Quality Oil Parcel and the Remaining Parcel.

43. The Estate received no distribution from either the Quality Oil Parcel sale or the Remaining Parcel sale.

44. Decedent was entitled to receive $110,000, representing his twenty percent share of the $550,000 Quality Oil sale, which closed prior to his death.

45. Had Plaintiff not signed the Buyout Agreement, the Estate would have been entitled to receive an additional $280,000 from the sale of the Remaining Parcel.

46. Plaintiff received only $200,000 for the Estate's membership interest in KB Holdings. Accordingly, the Estate has been damaged in the amount of at least $390,000, representing its twenty percent share of the combined sales proceeds, exclusive of additional damages arising from Defendants' misconduct.

47. At the time Defendants presented Plaintiff with the Buyout Agreement, Defendants knew that the sale of the Quality Oil Parcel had closed and that the $550,000 in proceeds had not yet been distributed to the members.

48. Upon information and belief, Defendants also knew that the sale of the Remaining Parcel was imminent and intended to complete the sale after fraudulently extinguishing the Estate's membership interest.

49. Defendants deliberately concealed the existence and value of the Quality Oil Parcel sale and the anticipated sale of the Remaining Parcel from Plaintiff to induce her to accept a grossly inadequate buyout.

50. Defendants acted with knowledge of Plaintiff's limited access to Company information and her vulnerable position and age following Decedent's death.

51. Upon information and belief, after Decedent was hospitalized and unconscious prior to his death, Defendants began devising and coordinating a plan to effectuate the buyout of Decedent's membership interest in KB Holdings, in anticipation of his death and without his knowledge or participation.

**FOR A FIRST CAUSE OF ACTION**
(Fraud – Against All Defendants)

52. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

53. Defendants made false representations of material facts to Plaintiff, including but not limited to (i) representing that the $150,000 buyout offer was a fair offer for Decedent's twenty percent membership interest in KB Holdings; (ii) representing that the membership interest would be "hard to sell"; (iii) failing to disclose the existence and value of the Quality Oil sale proceeds and the impending proceeds for the sale of the Remaining Parcel; and (iv) failing to furnish other material information concerning the Company's business and affairs.

54. At the time Defendants made these representations, Defendants knew that the representations were false or made them with reckless disregard for their truth or falsity.

55. Defendants intended that Plaintiff would rely on these false representations and the concealment of material facts.

56. Plaintiff justifiably relied on Defendants' false representations and the assurances provided by Mr. Ausherman and Chase McGill on behalf of Defendants, and as a result, Plaintiff signed the Buyout Agreement and accepted the inadequate buyout amount.

57. As a direct and proximate result of Defendants' fraud, Plaintiff has suffered damages in an amount to be proven at trial, but not less than $200,000, plus punitive damages, attorneys' fees, and costs.

**FOR A SECOND CAUSE OF ACTION**
(Constructive Fraud – Against All Defendants)

58. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

59. At all times relevant to this action, Defendants, as members of KB Holdings, owed fiduciary duties to Decedent and, upon his death, to the Estate of Decedent and its Personal Representative.

60. By virtue of their fiduciary relationship with Decedent and his Estate, Defendants occupied a position of trust and confidence with respect to Plaintiff.

61. Defendants breached their fiduciary duties by making false representations and concealing material facts from Plaintiff, thereby taking advantage of Plaintiff's trust and confidence to induce her to relinquish the Estate's membership interest for a fraction of its true value.

62. Defendants acted willful, wanton, or with reckless disregard for Plaintiff's rights.

63. As a direct and proximate result of Defendants' constructive fraud, Plaintiff has suffered damages in an amount to be proven at trial, plus punitive damages, attorneys' fees, and costs.

**FOR A THIRD CAUSE OF ACTION**
**(Breach of Contract – Against Defendant KB Holdings)**

64. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

65. The Operating Agreement of KB Holdings constitutes a valid and enforceable contract between the Company and its members, including Decedent.

66. Section 12.1(b) of the Operating Agreement provides that "[t]he Company shall furnish to a Member, and to the legal representative of a deceased Member or Member under legal disability: (1) Without demand, information concerning the Company's business or affairs reasonably required for the proper exercise of the Member's rights and performance of the Member's duties under this Agreement and the Act[.]"

67. Plaintiff, as the Personal Representative of the Estate of Decedent, is the "legal representative of a deceased Member" within the meaning of Section 12.1(b) of the Operating Agreement.

68. Defendant KB Holdings breached Section 12.1(b) of the Operating Agreement by failing to furnish Plaintiff with information concerning the Company's business or affairs, including but not limited to: (i) the Operating Agreement itself; (ii) information regarding the sale of the Quality Oil Parcel and the proceeds; (iii) information regarding the imminent sale of the Remaining Parcel and anticipated proceeds; and (iv) any other information reasonably required for Plaintiff to exercise the Estate's rights under the Operating Agreement.

69. At no time did Defendant KB Holdings provide Plaintiff with any papers, documents, or information about KB Holdings before or at the time of signing the Buyout Agreement.

70. As a direct and proximate result of Defendant KB Holdings' breach of contract, Plaintiff has suffered damages in an amount to be proven at trial, plus attorneys' fees and costs as allowed under the Operating Agreement or by law.

## FOR A FOURTH CAUSE OF ACTION
**(Breach of Fiduciary Duty – Against Defendants Rote, Verville, McGill, and DSSS)**

71. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

72. Pursuant to the Operating Agreement of KB Holdings and the South Carolina Uniform Limited Liability Company Act, Defendants, as members of KB Holdings, owed fiduciary duties of loyalty, care, and good faith to Decedent and, upon his death, to his Estate.

73. Under the Operating Agreement, each member's duty of loyalty includes the duty "[t]o account to the Company and to hold as trustee for the Company any property, profit or benefit

11

derived by the Member in the conduct or winding up of the Company's business or derived from a use by the Member of the Company's property, including the appropriation of a Company opportunity."

74. Under the Operating Agreement, each member must "discharge his duties and exercise any of his rights consistently with the obligation of good faith and fair dealing which he owes to the Company and the other Members."

75. Defendants breached their fiduciary duties by: (a) concealing material facts from Plaintiff regarding the value of the Estate's membership interest; (b) failing to disclose the sale proceeds from the Quality Oil Parcel and the impending $1.4 million land sale; (c) inducing Plaintiff to relinquish the Estate's membership interest for grossly inadequate consideration; (d) failing to distribute to the Estate its rightful share of Company profits; and (e) appropriating for themselves Company opportunities and profits that rightfully belonged to the Estate.

76. As a direct and proximate result of Defendants' breach of fiduciary duty, Plaintiff has suffered damages in an amount to be proven at trial, plus punitive damages, attorneys' fees, and costs.

## FOR A FIFTH CAUSE OF ACTION
### (Civil Conspiracy – Against All Defendants)

77. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

78. Defendants combined, agreed, and conspired among themselves to defraud Plaintiff and deprive the Estate of Decedent of its rightful share of KB Holdings' assets and profits.

79. In furtherance of the conspiracy, Defendants committed numerous overt acts, including, without limitation: (i) presenting Plaintiff with a buyout offer immediately upon her arrival in South Carolina, before she could review any Company records; (ii) failing to provide

Plaintiff with the Operating Agreement or any other Company documents; (iii) having Mr. Ausherman falsely assure Plaintiff that the buyout offer was "fair"; (iv) concealing the Quality Oil sale proceeds and the impending proceeds from the sale of the Remaining Parcel; and (v) closing the sale of the Remaining Parcel after extinguishing the Estate's interest in the Company.

80. When confronted by Plaintiff, Mr. Ausherman on behalf of DSSS admitted that it was "outvoted," demonstrating that the Defendants acted in concert to defraud Plaintiff.

81. Defendants' conduct was intentional, willful, wanton, and undertaken in reckless disregard of Plaintiff's rights. Defendants knowingly exploited Plaintiff's lack of access to material financial information and her vulnerable position following her brother's death in order to secure the Estate's interest at an unfair and substantially undervalued price.

82. As a direct and proximate result of Defendants' conspiracy, Plaintiff has suffered damages in an amount to be proven at trial, plus punitive damages, attorneys' fees, and costs.

## FOR A SIXTH CAUSE OF ACTION
### (Negligent Misrepresentation – Against All Defendants)

83. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

84. Defendants, as members of KB Holdings who owed fiduciary duties to Decedent and his Estate, supplied false information to Plaintiff regarding the value of the Estate's membership interest in KB Holdings.

85. Defendants knew or should have known that Plaintiff would rely on the information provided by Defendants in deciding whether to accept the buyout offer.

86. Defendants failed to exercise reasonable care in communicating the information to Plaintiff, and the information was false and misleading.

87. Plaintiff justifiably relied on the false information provided by Defendants and, as

a result, suffered damages.

88. As a direct and proximate result of Defendants' negligent misrepresentation, Plaintiff has suffered damages in an amount to be proven at trial, plus attorneys' fees and costs.

## FOR A SEVENTH CAUSE OF ACTION
### (Unjust Enrichment – Against All Defendants)

89. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

90. Defendants have been unjustly enriched by retaining for themselves the Estate's rightful share of the Quality Oil Parcel sale proceeds and the Remaining Parcel sale proceeds.

91. It would be inequitable for Defendants to retain these benefits without compensating Plaintiff for the Estate's rightful share.

92. Plaintiff is entitled to restitution in an amount to be proven at trial.

## FOR AN EIGHTH CAUSE OF ACTION
### (Rescission of Buyout Agreement – Against KB Holdings)

93. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

94. Plaintiff entered into the Buyout Agreement on June 30, 2025, based on Defendants' fraudulent misrepresentations and concealment of material facts.

95. Had Plaintiff known the true value of the Estate's membership interest in KB Holdings, including the Quality Oil Parcel sale proceeds and the impending sale of the Remaining Parcel, Plaintiff would not have signed the Buyout Agreement.

96. Plaintiff is entitled to rescission of the Buyout Agreement and restoration of the Estate's twenty percent membership interest in KB Holdings, or alternatively, damages equal to the fair market value of that interest as of the date of trial.

**WHEREFORE**, Plaintiff respectfully prays that this Court enter judgment in her favor against Defendants as follows:

1. Awarding Plaintiff compensatory damages in an amount to be determined at trial;

2. Awarding Plaintiff punitive damages against Defendants for their willful, wanton, and fraudulent conduct;

3. Rescinding the Membership Interest Redemption Agreement dated June 30, 2025, and restoring the Estate's twenty percent membership interest in KB Holdings, or alternatively, awarding Plaintiff damages equal to the fair value of that interest;

4. Awarding Plaintiff pre-judgment and post-judgment interest at the highest rate permitted by law;

5. Awarding Plaintiff her reasonable attorneys' fees and costs of this action; and

6. Awarding Plaintiff such further and other relief as this Court deems just and proper.

Dated this 5th day of March, 2026.

>Respectfully submitted,
>
>ADAMS & REESE LLP
>
>*s/Rhett Michael DeHart*
>Rhett Michael DeHart, ID 7777
>Katherine H. Mills, ID 14154
>1221 Main Street, Suite 1200
>Columbia, South Carolina 29201
>(803) 254-4190
>rhett.dehart@arlaw.com
>kate.mills@arlaw.com
>
>*Counsel for Plaintiff Bonnie J. Kassel, as Personal Representative of the Estate of Kal Jordan Kassel*